[Civ. No. 2560.   First Appellate District, Division One.—December 24, 1918.]

JENNIE M. BLAIR, Respondent, v. PAUL WESSINGER et al., Appellants.

LEASE—GUARANTY OF RENT—AMBIGUITY IN DESCRIPTION OF PREMISES— PAROL EVIDENCE.—In an action against guarantors of rent under a lease, parol evidence was properly admitted to explain an extrinsic ambiguity in the description of the leased premises.

ID.—PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT.—In such action, knowledge of the agent of the guarantor as to what property was being leased was the knowledge of the defendants.

ID.—OTHER ACTION PENDING.—In such case the pendency of another action by the lessor against the lessee for rent is not a bar against an action by the lessor against the guarantors.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

John T. Williams, Sterling Carr and R. M. F. Soto for Appellants.

Mastick & Partridge and Alan C. Van Fleet for Respondent.

THE COURT.—This is an action upon a contract by which defendants guaranteed the payment of certain rent of premises hereinafter described and let by the plaintiff to Ryan and Long.

The most important question in this case is the construction to be placed upon the description of the demised premises found in the lease. The description is as follows:

"The corner store situate in the four story building at the northwest corner of Mason and Ellis Streets, said store having a frontage of 15 feet on Ellis Street and a uniform depth of 75 feet, and more particularly known and designated as No. 200 Ellis Street, San Francisco, together with that portion of the basement thereunder which has been partitioned off for the use of said store."

This seems clear enough, but when the subject matter of the lease is disclosed, a problem arises which is not so simple. On May 1, 1911, the plaintiff was the owner of the building on the northwest corner of Ellis and Mason Streets, in the city of San Francisco, which had a front of 60 feet on Mason Street and of 97 feet 6 inches on Ellis Street. In the southeast corner of this building was a store with a frontage of 15 feet on Ellis Street and a "depth of 45 feet on Mason Street," the entrance being on Ellis and the store being No. 200 Ellis Street. In the rear of this store was a small store having a frontage of 15 feet on Mason Street by a depth of 15 feet on Latham Place, which ran parallel to Ellis Street and bounded the building on the north side. The entrance to this small store was on Mason Street and it was known as No. 209 Mason Street.

On the date mentioned, Ryan and Long hired the store No. 200 Ellis Street for a period of five years and the description in the lease is that above quoted. The question in this case is whether that description designating the property leased as No. 200 Ellis Street and also describing it as having a "uniform depth of 75 feet" covered only the store 15 by 45 feet in size and known as No. 200 Ellis Street, or whether it covered the two stores above referred to.

Ryan and Long refused to pay further rent after having paid rent for three years. The appellants contend that the lease, by reason of the description of the property as having a depth of 75 feet, covered both stores. Ryan and Long never

occupied the smaller store, but only the larger one (No. 200 Ellis Street) and the basement, but they and their guarantors, the appellants, claim that they were to have possession of the smaller store also as soon as the tenant thereof, known as the "Hasty Messenger Service," should vacate it, and that not having been given possession thereof, Ryan and Long were in so far evicted, and further that the consent of Ryan and Long to occupy only the larger store, and not the smaller store, constituted a modification of the lease without the consent of the guarantors, which exonerated them.

The Hasty Messenger Service vacated the smaller store on August 31, 1913. The court admitted evidence of the situation of the property and enough correspondence between agents of the parties to acquaint the trial judge with the subject matter of the lease and the situation of the parties in regard thereto, and thereupon it was seen that there was in the description of the property contained in the lease what was formerly called a "latent" or "hidden" ambiguity, and which is now in our code denominated an "extrinsic" ambiguity (Code Civ. Proc., sec. 1856). It consists in this: That the store, No. 200 Ellis Street, did not have a depth of 75 feet, but only a depth of 45 feet. The court thereupon found that the demised premises consisted of the store No. 200 Ellis Street, and that it had a depth of 45 feet on Mason Street and did not embrace the smaller store, No. 209 Mason Street.

The appellant claims that the evidence admitted to show these facts was incompetent because varying the terms of the written lease by parol, and that the finding is against the evidence. The evidence which was admitted was competent as tending to explain an extrinsic ambiguity (Code Civ. Proc., sec. 1856), and also because it came within the rule permitting evidence of the circumstances under which the lease was made and the subject matter thereof so that the judge might be placed in the position of those whose language he was to interpret. (Civ. Code, sec. 1647; Code Civ. Proc., sec. 1860.)

There certainly was a conflict in the evidence as to whether it was the intention of the parties to include the smaller store in the lease. Ryan and Long both testified that they were to have the smaller store as soon as it was vacated by the Hasty Messenger Service. They also testified that pending the vacating of the smaller store by that tenant, they were to

o

occupy a room 20 by 18 feet in size connected with No. 202 Ellis Street, another store contained in plaintiff's building.

On September 29, 1911, Ryan and Long entered into a lease with one Bueneman, the tenant of No. 202 Ellis Street, for this room in the rear of No. 202 Ellis Street, at a rental of $20 per month, and they continued to occupy it from May 1, 1911, until July 1, 1914, regularly paying the rent from September 29, 1911, until July 1, 1914, nearly a year after the Hasty Messenger Service had vacated No. 209 Mason Street. This is quite inconsistent with their claim that they were to have the use of this small room in the rear of No. 202 Ellis Street in lieu of No. 209 Mason Street while the latter place was occupied by the Hasty Messenger Service.

It also appears that one Buttner was the agent of the defendants in the negotiations for the lease and that Sterling Carr was their attorney, and that George Starr was the agent of the plaintiff in that transaction. Certain correspondence between these parties was received in evidence, and in one of the letters from Starr to Carr, the latter was directly informed that the subject matter of the lease was the "store for a saloon at the northwest corner of Mason and Ellis Streets, not including the small store." Buttner testified as follows on this subject:

"Q. At that time you thought the words 'not to include the small store' meant the little store which we are denominating 200 Ellis Street?

"A. Absolutely so; yes, sir.

"Q. If you had known that the plaintiff didn't intend to give Ryan & Long possession of what was known as 209 Mason Street, the messenger office, you would not have secured the bond or entered into these negotiations?

"A. Not at that date." ·

It is thus evident that Buttner knew of this letter. But it was the province of the trial court to place a construction upon all of this evidence, and it seems to us that this finding that the small store at No. 209 Mason Street was not included in the lease was justified and that it correctly resolved the extrinsic ambiguity in the language of the lease. There was no change. in the terms of the lease. This is especially apparent when the description contained in the guarantee is taken into consideration. The premises were therein described as "that certain store known as 200 Ellis Street together with the base-

ment thereunder," and when we consider that Buttner and Carr, the agents of defendants, both knew of Starr's letter expressly excluding the store at No. 209 Mason Street—if we are to accept the court's construction of that instrument—it is evident that no real change was made in the lease. The court simply construed the lease in the light of the evidence before it. No reformation thereof was necessary.

The point that the defendants understood they were guaranteeing the payment of rent for both stores, and that the lease embraced both stores, is disposed of by the letter from Starr to Buttner and Carr. The knowledge of Buttner, the responsible agent conducting the negotiations, as to what property was being leased, was the knowledge of his principals, the defendants.

The amended complaint was demurred to on the ground that the cause of action for reformation of the lease was barred by the statute of limitations. Conceding this to be true, in the view we take of the matter those allegations were unnecessary to the sufficiency of the complaint and they may be disregarded in the decision of the case.

As the defendants were bound under their guaranty to pay this rent when Ryan and Long defaulted, we think this a proper case for the application of the rule of section 4½, article VI, of the constitution—and that as the amendment offered did not modify or take away the force of the original pleading in the case (which was a direct action upon a guaranty) the defendants suffered no miscarriage of justice from the introduction of the amendment.

This ruling also disposes of other exceptions taken at the trial and based upon the theory that the reformation of the instrument was necessary in order to sustain a judgment thereon.

It is further contended by appellant that the action was prematurely brought because of the pendency of another action between plaintiff on the one hand, and Ryan and Long on the other for the unpaid rent. The defendants were not parties to that action, and that action is no bar to an action against them on the guaranty.

We think this covers substantially all the points made for the reversal in this case.

Judgment is affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on January 23, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1919.

All the Justices concurred.